# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2718-17T4

NEW JERSEY DIVISION
OF CHILD PROTECTION
AND PERMANENCY,

    Plaintiff-Respondent,

v.

S.P.,

    Defendant-Appellant.

_____

IN THE MATTER OF J.R. and Jo.R.,

    Minors.

_____

Submitted March 20, 2019 - Decided May 3, 2019

Before Judges Fuentes, Accurso and Moynihan.

On appeal from Superior Court of New Jersey, Chancery Division, Family Part, Passaic County, Docket No. FN-16-0170-17.

Joseph E. Krakora, Public Defender, attorney for appellant (Richard A. Foster, Assistant Deputy Public Defender, of counsel and on the briefs).

Gurbir S. Grewal, Attorney General, attorney for respondent (Jason W. Rockwell, Assistant Attorney General, of counsel; Yudelka R. Felipe, Deputy Attorney General, on the brief).

Joseph E. Krakora, Public Defender, Law Guardian, attorney for minors (Noel C. Devlin, Assistant Deputy Public Defender, of counsel and on the brief).

PER CURIAM

Defendant S.P. appeals from an October 11, 2017 fact-finding order, now final, that she abused or neglected her two sons, then twelve and fifteen years old. Because that conclusion is supported by substantial credible evidence in the record, we affirm. See N.J. Div. of Youth & Family Servs. v. L.L., 201 N.J. 210, 226 (2010).

The incident giving rise to this action was documented in Division of Child Protection and Permanency records admitted in evidence at the fact-finding hearing. In the early morning hours of April 29, 2017, defendant's older son had been playing video games in his room while his younger brother slept. Wandering into his mother's bedroom sometime after 3 a.m., the older boy found her talking on the phone. Believing she was talking with a man, the boy got upset and called her a whore, among other things. That led to a loud argument between the two. Defendant threw things around the kitchen and eventually chased or followed her son through the house with a kitchen knife.

When the boy locked himself inside the bathroom, defendant plunged the knife into the door, more than once, breaking the blade. When the older boy emerged, he slammed a door so hard it broke the glass. The younger boy initially reported he was awakened by the argument and watched his mother chase his brother into the bathroom with a knife. He later told the Division's psychologist he slept through the whole thing.

Defendant called the police. The officer who responded testified at the fact-finding hearing. He was familiar with the family, having been called to their home on numerous other occasions, usually on defendant's report that her older son was beating her. He found the house in disarray, with broken glass and kitchen items strewn about and a kitchen knife with a broken blade on the kitchen table. Defendant reported her older son was haranguing her about her personal life, which the officer said was the usual cause of the arguments that brought him to the house.

The officer testified defendant was slightly intoxicated; he could smell alcohol on her breath and she was slurring her words. The older boy reported his mother tried to stab him, causing him to seek shelter in the bathroom. The boy claimed his mother stabbed at the door several times, and the officer saw damage he believed consistent with the boy's report. The officer arrested

defendant on charges of endangering the welfare of a child, terroristic threats, possession of a weapon for an unlawful purpose, and aggravated assault.

The Division effected an emergency removal of the boys, placing them initially with a relative and later in a resource home. The Division was granted care and custody of both children. Defendant was permitted weekly supervised visits.

The Division's psychological examination of the boys, also admitted in evidence, provided some additional background. Their father, defendant's husband, had died suddenly several months before as a result of sleep apnea. His death had thrown the family into turmoil, with defendant's older son taking his father's death especially hard. Formerly a good student, the boy started skipping school and neglecting his personal hygiene. Two months before this incident, he was admitted to a psychiatric hospital for a week. Doctors diagnosed him with manic depressive disorder and attention-deficit/hyperactivity disorder. He was prescribed Wellbutrin and Xanax, which he reportedly stopped taking a week after his release.

Both boys reported the older boy had become pre-occupied with their mother forming a new relationship. They also claimed their mother's drinking had increased in the months since their father's death. The older boy told the

evaluator he was responsible for much of the conflict with his mother. He claimed his mother had not actually tried to stab him, and although she had threatened to stab him, he did not believe she would have done so. Speaking of his father, the younger boy told the evaluator, "I just want him back . . . If he was here . . . none of this would be happening."

Neither boy claimed any fear of their mother and both very much wanted to be reunited with her. The criminal charges against defendant were eventually resolved with her admission into the pre-trial intervention program.[1] Defendant was compliant with all services, and nine months after the incident, the family was reunited and the Division closed its case.

Following the admission of evidence and attorneys' closing arguments, the judge rendered his findings. He found defendant had been drinking and the argument started when her oldest son called her a slut and a whore. The judge found defendant ran after her son "while in possession of a knife," which she broke in the bathroom door the boy had escaped behind. The judge accepted the older boy's report to the police and the Division caseworker that defendant

---

[1] Pretrial Intervention is a "diversionary program through which certain offenders are able to avoid criminal prosecution by receiving early rehabilitative services expected to deter future criminal behavior." State v. Nwobu, 139 N.J. 236, 240 (1995).

chased him with a kitchen knife, which he found corroborated by the officer's observations and the broken knife.[2] The judge did not accept the Division's argument that the case was one involving excessive corporal punishment. Instead, the judge found defendant's actions "put her children in . . . danger by virtue of the fact that she was in possession of a knife. That she ran after one of the children with a knife." The judge concluded defendant's actions endangered her sons by placing them both at substantial risk of imminent harm.

On appeal, defendant argues the trial court's findings of "imminent danger" and "substantial risk" are not supported by the credible evidence in the record. Alternatively, she maintains that even if we were to affirm she abused and neglected her older son, the record does not support such a finding with regard to her younger son. The Law Guardian supports defendant's arguments, noting there was "no expert testimony establishing a risk of harm emotionally,

---

[2] The judge found the older boy's account of the incident was also corroborated by his younger brother's statement to the Division caseworker that he saw their mother chase his brother into the bathroom and stab at the door with the knife. Although finding ample corroboration of the older boy's report in this record, we do not agree the younger boy's hearsay statement, which could not, standing alone, suffice for a finding of abuse and neglect, can serve as corroboration pursuant to N.J.S.A. 9:6-8.46(a)(4) ("[P]revious statements made by the child relating to any allegations of abuse or neglect [are] admissible in evidence; provided, however, that no such statement, if uncorroborated, shall be sufficient to make a fact finding of abuse or neglect.").

and the facts are not self-evident that there was a physical risk of harm." None of those arguments has any merit.

The Division clearly established on this record that defendant, who had been drinking, took a knife from the kitchen in the middle of the night and pursued her son in the midst of a heated argument over his verbal abuse and disrespect towards her. When the older boy, who was then nearly sixteen, took refuge behind a locked bathroom door, defendant plunged the knife into the door while her twelve-year-old son watched from nearby. We would be hard pressed to find a more vivid example of the sort of grossly negligent conduct posing a risk of imminent harm to a child the Legislature designed the text of N.J.S.A. 9:6-8.21(c)(4)(b) to capture. See N.J. Dep't of Children & Families v. E.D.-O., 223 N.J. 166, 186 (2015).

We recognize that "[a]ny allegation of child neglect in which the conduct of the parent or caretaker does not cause actual harm is fact-sensitive." Id. at 192. And while "the difference between merely negligent conduct and wanton and willful misconduct" can sometimes be difficult to discern, G.S. v. Dep't of Human Servs., 157 N.J. 161, 178 (1999), it is not so here. "[W]illful and wanton misconduct implies that a person has acted with reckless disregard for the safety of others." Id. at 179. In other words, "[w]here an ordinary reasonable person

would understand that a situation poses dangerous risks and acts without regard for the potentially serious consequences, the law holds him responsible for the injuries he causes." Ibid.

A parent picking up a knife in the midst of a heated argument with a teenager is a textbook example of willful and wanton misconduct. Had the boy not fled into the bathroom, he could have been seriously hurt or killed by a blow from defendant. Had he opened the door in response to his mother's entreaties as she was plunging her knife into it, the results could have been tragic. Nor was the risk confined to the son defendant was chasing with a knife. The younger boy explained he was awakened at 4 a.m. by the row and watched his mother chase his brother with a knife. He could have stumbled into his mother's path or attempted to intervene to protect his brother with catastrophic results. See E.D.-O., 223 N.J. at 189.

We have no hesitation in determining the trial court's finding that defendant exposed both boys to a substantial risk and imminent danger by acting in reckless disregard of their safety is supported by adequate, substantial, and credible evidence in the record. N.J. Div. of Youth & Family Servs. v. Z.P.R., 351 N.J. Super. 427, 433 (App. Div. 2002). Although the misfortune that has befallen this family has obviously affected them all profoundly, defendant's

reckless response to her older son's indisputable insolence put both boys in imminent danger or at substantial risk of harm.  See N.J. Div. of Youth & Family Servs. v. A.L., 213 N.J. 1, 8, 23 (2013).

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION