**RECORD IMPOUNDED**

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1168-15T1

NEW JERSEY DIVISION
OF CHILD PROTECTION
AND PERMANENCY,

       Plaintiff-Respondent,

v.

J.C.,

       Defendant-Appellant,

and

L.C. and J.R.,

       Defendants.

_____

IN THE MATTER OF
E.C., Ju.C., A.R., and J.R., minors.

_____

       Submitted May 16, 2017 — Decided July 7, 2017

       Before Judges Espinosa and Grall.

       On appeal from the Superior Court of New
       Jersey, Chancery Division, Family Part,
       Hudson County, Docket No. FN-09-0360-14.

Joseph E. Krakora, Public Defender, attorney for appellant (Victor E. Ramos, Assistant Deputy Public Defender, of counsel and on the briefs).

Christopher S. Porrino, Attorney General, attorney for respondent (Andrea M. Silkowitz, Assistant Attorney General, of counsel; Jodie E. Van Wert, Deputy Attorney General, on the brief).

Joseph E. Krakora, Public Defender, Law Guardian, attorney for minor E.C. (Todd Wilson, Designated Counsel, on the brief).

Joseph E. Krakora, Public Defender, Law Guardian, attorney for minor J.C. (Catherine Davila, Designated Counsel, on the brief).

Joseph E. Krakora, Public Defender, Law Guardian, attorney for minors A.R. and J.R. (Nancy P. Fratz, Assistant Deputy Public Defender, on the brief).

PER CURIAM

This appeal is from an order entered on March 7, 2014, following a fact-finding hearing on allegations of abuse or neglect conducted pursuant to Title Nine, N.J.S.A. 9:6-8.44. The order memorializes the judge's determination that J.C.'s children were abused or neglected, as defined in N.J.S.A. 9:6-8.21(c)(4)(b).[1]  It became appealable as of right on October 5, 2015, when the judge entered a final order granting the Division

---

[1] Initials are used to maintain confidentiality consistent with Rule 1:38-3(d)(12).

of Child Protection and Permanency's (Division) unopposed request to dismiss its complaint. See N.J.S.A. 9:6-8.70.[2]

J.C. has five children, four of whom were removed from her care on an emergency basis in November 2013 pursuant to N.J.S.A. 9:6-8.29. At the time, J.C.'s eldest son, L.C., Jr., was eighteen years old and confined in a Detention Center in Massachusetts for sexual assault of his younger half-sister A.R. J.C.'s second-eldest son, E.C., was nearly sixteen and serving a term of probation imposed as a consequence of a delinquency adjudication in Connecticut for sexual conduct with his siblings. J.C.'s only daughter, A.R., was twelve, and A.R.'s brother, Ja.R., was nine.

Three months after the family moved to New Jersey, the juvenile probation department brought J.C.'s family to the Division's attention. E.C.'s probation had been transferred from Connecticut to New Jersey, and the Division contacted the family at the probation department's request.

_____

[2] J.C.'s notice of appeal identifies the March 7, 2014 order only. Although the parties have referred to evidence, arguments and rulings in subsequent proceedings, we do not address them because they were not before the judge in the fact-finding hearing and are not properly before us now. Silviera-Francisco v. Bd. of Educ. of the City of Elizabeth, 224 N.J. 126, 140-41 (2016).

Simone Coombs was in charge of the Division's investigation. She and a caseworker went to J.C.'s home on November 8, 2013. J.C. and all of the children except E.C. were present. Although the father of J.C.'s three oldest sons, was not residing with his family, he lived nearby and was present.

Coombs and her co-worker divided the task of conducting individual interviews at J.C.'s home. After those interviews, Coombs took the family to the prosecutor's office, where the children, including E.C., were interviewed separately.

During their separate interviews, E.C.'s siblings confirmed that J.C. worked and E.C. supervised them from the time they returned home after school until their mother returned from work. On material matters, the children's accounts were consistent. E.C. had a cellphone and a phone number he could call to contact J.C. at work in an emergency. Their uncle, E.P., sometimes checked on them when they were home but did not stay with them the whole time. The boys did their homework or played videogames, and A.R. went into the bathroom and stayed there alone. E.P. arrived at J.C.'s home while Coombs and her co-worker were there, but, on the objection of J.C.'s attorney, the judge ruled that Coombs could not discuss E.P.'s statements in her testimony.

During A.R.'s interview, she disclosed that she had attempted to slit her wrists three weeks earlier. She also reported prior hospitalizations due to her mental health. Later, J.C. confirmed A.R.'s hospitalizations and advised that her daughter had received counseling in Connecticut for depression and bipolar disorder.

During his interview, E.C. admitted sexually assaulting A.R. and being on probation.

During her interview, A.R. reported repeated and regular assaults by her oldest brother, L.C., and separate one-time incidents involving E.C. and Ju.C., during which each brother placed his penis in her mouth. By A.R.'s account, she told her mother about what L.C. and E.C. had done. J.C. confirmed that E.C. and Ju.C. had sexually assaulted A.R.

Importantly, E.C. admitted to being on probation and knowing he was not to be with A.R. without supervision. Upset and crying, he explained that he watched his siblings because his mother told him to do that.

More importantly, J.C. acknowledged that the terms of E.C.'s probation required him to be supervised when with A.R. She explained that E.P. provided that supervision, but the children's earlier disclosures contradicted her on that point.

A-1168-15T1

Following J.C.'s interview at the prosecutor's office, she was placed in a holding cell. Because the Division had to care for the children in J.C.'s absence, Coombs spoke with J.C. in the holding cell to inquire about A.R.'s medical needs. That is when J.C. disclosed her daughter's prior hospitalizations and counseling.

Coombs provided the only testimony at the fact-finding hearing, and her testimony was based on observations made during the interviews she conducted and summaries of statements made by J.C. and members of her family to Coombs and her co-worker. The judge ruled, quite properly, that statements made by J.C. and E.C. were admissible as statements against interest, N.J.R.E. 803(c)(25). She further ruled that the statements made by the children during their interviews were admissible pursuant to N.J.S.A. 9:6-8.46(a)(4), as "previous statements made by the child relating to any allegations of abuse or neglect." While not sufficient to establish abuse or neglect without corroboration, the children's statements were corroborated by E.C.'s and J.C.'s statements against interest.

The judge who presided over the fact-finding hearing determined that the Division proved neglect pursuant to N.J.S.A. 9:6-8.21(c)(4)(b). In pertinent part, the statute defines the operative term "[a]bused or neglected child" to include

a child less than 18 years of age . . . whose physical, mental, or emotional condition has been impaired or is in imminent danger of becoming impaired as the result of the failure of his parent . . . to exercise a minimum degree of care . . . in providing the child with proper supervision or guardianship, by unreasonably inflicting or allowing to be inflicted harm, or substantial risk thereof . . .

A parent "fails to exercise [the requisite] minimum degree of care when he or she is aware of the dangers inherent in a situation and fails adequately to supervise the child or recklessly creates a risk of serious injury to that child." G.S. v. N.J. Div. of Youth & Family Servs., 157 N.J. 161, 181 (1999). "[T]he phrase 'minimum degree of care' refers to conduct that is grossly or wantonly negligent, but not necessarily intentional." N.J. Div. of Child Prot. & Perm. v. E.D.-O., 223 N.J. 166, 179 (2015) (quoting G.S., supra, 157 N.J. at 178). Thus, the parental failure must be accompanied by "knowledge that injury is likely to, or probably will, result." Ibid. The essential elements must be established by a preponderance of the evidence. Id. at 178.

The judge found that J.C. was, by her own admissions, well aware of E.C.'s prior conduct, A.R.'s fragile state of mind, and the condition of E.C.'s probation designed to protect A.R. The judge further found that J.C. was aware of the risk of serious

harm to E.C.'s well-being she created by directing him to supervise A.R. and his other siblings in violation of a condition of his probation.

On appeal, J.C. raise seeks reversal on three grounds.

<u>I.</u>

THE TRIAL COURT'S FINDING OF CHILD NEGLECT MUST BE REVERSED BECAUSE IT IS NOT BASED ON SUBSTANTIAL CREDIBLE EVIDENCE IN THE RECORD BELOW AND BECAUSE THE COURT ERRED IN ITS EVALUATION OF THE UNDERLYING FACTS AND IMPLICATIONS TO BE DRAWN THEREFROM.

A. DCPP'S FAILURE TO SUBMIT [E.C.'S] PROBATION RECORD WAS INSUFFICIENT TO ESTABLISH THAT [J.C.] HAD PLACED [A.R.] OR THE OTHER CHILDREN AT SUBSTANTIAL RISK OF HARM BECAUSE IN ITS ABSENCE IT IS NOT CLEAR WHETHER [E.C.] REQUIRED ADULT SUPERVISION IN THE PRESENCE OF [A.R.], WHETHER ANY OTHER RESTRICTIVE PROVISIONS APPLIED OR WHETHER [E.C.'S] PROBATION AND ITS CONDITIONS CONTINUED TO BE IN PLACE WHEN [E.C.] AND THE FAMILY RELOCATED TO NEW JERSEY.

B. [J.C.] DID NOT FAIL TO PROVIDE [A.R.] PROPER SUPERVISION OR GUARDIANSHIP THEREBY PLACING HER OR THE OTHER CHILDREN AT A SUBSTANTIAL RISK OF HARM WHERE [J.C.] EXERCISED A MINIMUM DEGREE OF CARE BY TAKING THE CAUTIONARY ACT OF OBTAINING THE ASSISTANCE OF [THEIR UNCLE] TO MONITOR THE CHILDREN FOR THE TIME THEY RETURNED FROM SCHOOL TO THE TIME WHEN [J.C.] RETURNED FROM THE JOB THAT INSURED THE PROVISION OF THE CHILDREN'S BASIC NEEDS.

C. THE CHILDREN WERE NOT PLACED AT AN IMMINENT DANGER OF IMPAIRMENT WHERE, [THEIR UNCLE] AT A BARE MINIMUM CHECKED IN ON THEM, THE INCIDENT THAT RESULTED IN [E.C.'S] PROBATION TRANSPIRED FIVE TO SIX YEARS AGO WITHOUT RECURRENCE, [A.R.'S OTHER BROTHERS] WERE PRESENT AT HOME TO INSURE [A.R.] WAS NOT ALONE WITH [E.C.], AND [J.C.] AND THE FAMILY HAD ENGAGED IN SERVICES TO ADDRESS THE PAST INCIDENT THAT TRANSPIRED AGAINST [A.R.] UNBEKNOWNST TO [J.C.]

We have considered J.C.'s arguments in light of the record of the fact-finding hearing and the judge's decision. We have also considered the arguments presented by the law guardian for Ju.C., who is the only one of J.C.'s children who supports reversal rather affirmance of the order under review. We affirm, because the Division's competent evidence adequately supports the judge's decision, Rule 2:11-3(e)(1)(A), and the arguments presented in support of reversal have insufficient merit to warrant any discussion beyond what the judge said in her oral opinion of March 7, 2014, Rule 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION