RECORD IMPOUNDED

 NOT FOR PUBLICATION WITHOUT THE
 APPROVAL OF THE APPELLATE DIVISION
 This opinion shall not "constitute precedent or be binding upon any court."
 Although it is posted on the internet, this opinion is binding only on the
 parties in the case and its use in other cases is limited. R.1:36-3.

 SUPERIOR COURT OF NEW JERSEY
 APPELLATE DIVISION
 DOCKET NO. A-0409-15T1

NEW JERSEY DIVISION OF
CHILD PROTECTION AND
PERMANENCY,

 Plaintiff-Respondent,

v.

S.N.,

 Defendant-Appellant,

and

H.M.,

 Defendant.
_________________________________________

IN THE MATTER OF U.N.,

 A Minor.
_________________________________________

 Submitted March 7, 2017 – Decided July 13, 2017

 Before Judges Koblitz and Sumners.

 On appeal from Superior Court of New Jersey,
 Chancery Division, Family Part, Hudson County,
 Docket No. FN-09-356-13.

 Joseph E. Krakora, attorney for appellant
 (John A. Albright, Designated Counsel, on the
 brief).
 Christopher S. Porrino, Attorney General,
 attorney for respondent (Andrea M. Silkowitz,
 Assistant Attorney General, of counsel; Alaina
 M. Antonucci, Deputy Attorney General, on the
 brief).

 Joseph E. Krakora, Public Defender, Law
 Guardian, attorney for minor (Charles
 Ouslander, Designated Counsel, on the brief).

PER CURIAM

 Defendant S.N. (Susan)1 appeals from the fact-finding

determination that she abused or neglected her eight-year-old

adopted son U.N. (Upton) through inadequate supervision,

establishing inconsistent discipline and poor boundaries, and

failing to follow advice to seek psychological/psychiatric

treatment for him. The Law Guardian on behalf of the child urges

us to affirm and, after a thorough review of the record and the

trial judge's findings, we affirm substantially for the reasons

reflected in the October 4, 2013 written decision of Judge

Bernadette N. DeCastro.

 In 2011, Upton had immigrated to the United States from

Pakistan, and was adopted by Susan and her husband, H.M. (Harry).2

1
 We use first name pseudonyms to protect the privacy of parties
and the minor child and for convenience. We mean no disrespect.
2
 Despite being named as a defendant, Harry was not an alleged
perpetrator of the abuse or neglect against Upton as Susan was his
primary caretaker at the time of the Division's initial involvement

 2 A-0409-15T1
The Division of Child Protection and Permanency (Division) first

became involved with the couple in March 2012, when it received a

referral that Upton arrived at school with facial injuries. The

Division's investigation determined that the allegations of abuse

or neglect were unfounded because Upton fell off his bike.

 In October 2012, the Division received another referral that

Upton arrived at school with two scratches on his cheek. The

Division's investigation disclosed that the scratches were the

result of Upton running away from Susan. A short time later, the

police were able to locate Upton and he was returned to Susan's

care. The Division determined that the allegation of physical

abuse was unfounded.

 A third referral was made in November 2012, when the school

nurse reported concerns about the type of supervision that Upton

received at home because he arrived at school with facial

scratches. The Division's investigation disclosed that the

injuries occurred when Upton, while accompanied by Susan, hit the

side of his face when jumping on stairs. Of more concern to the

Division was finding that Upton had a habit of leaving home without

with the family and the incidents thereafter, which gave rise to
this appeal. A few months prior to the Division's initial
involvement, Harry was partially paralyzed and substantially
disabled due to a stroke and heart attack, respectively. He passed
away in March 2014.

 3 A-0409-15T1
permission to play in the neighborhood and engage with strangers.

The Division found that allegations of physical abuse were

unfounded, but recommended Upton receive a psychological

evaluation due to concerns over his behavior.

 Dr. Jermour A. Maddux, Psy. D., subsequently evaluated Upton.

He opined that Upton's reported lying, stealing, and running away

from home were "the result of inadequate supervision, poor

boundaries, inconsistent discipline and an unstable attachment."

Dr. Maddux "strongly recommended that [Upton] be referred

immediately to individual psychological therapy with an expert in

treating children with conduct disorders residing in permissive

home environments." He also recommended that Upton's parents be

active participants with Upton's therapy, and receive parenting

skills training concerning behaviorally disturbed children.

 Following Dr. Maddux's evaluation, the Division received the

fourth and fifth referrals concerning Upton. An anonymous person

informed the Division that Upton was roaming the neighborhood

streets alone at night, most often past midnight, and stealing

mail from mailboxes and spraying an unknown solvent on cars.

Jersey City police made another referral that Upton ran away from

home and returned, and that he has a history of running away.

During the Division's subsequent investigation, Susan acknowledged

that she could not sleep or go to the bathroom without Upton

 4 A-0409-15T1
leaving the house, and she was so overwhelmed that she was

contemplating sending Upton back to the Pakistani orphanage from

where he was adopted. Susan also mentioned that a stranger

allegedly sexually assaulted Upton on an occasion when he left the

home without permission.

 Susan agreed to be evaluated by Dr. Maddux, who opined that

"her psychological functioning put [Upton's] psychological health

in sure danger of becoming impaired[]" because her parental

judgement is controlled by fear of guilt and Upton's threats. Dr.

Maddux recommended that "[Susan and Upton] be referred to a program

or service that works with the parent and the child[.]"

Additionally, he recommended that Susan "[c]onsider out of home

individual parenting training specifically for caregivers of

behaviorally-disturbed children[,]" which would help Susan develop

a methodology for parenting that would improve Upton's behavioral

issues. Dr. Maddux further opined that due to Upton's history of

physically assaulting Susan and Upton's threats to harm himself

and her, "another adult figure reside with the family to provide

caregiving assistance[,]" and that Susan be given information

regarding "Mobile Crisis Response[.]"

 A sixth referral was received after Susan's arm was placed

in a sling because Upton had pushed her. When she went to a local

hospital for emergency care, she left Upton at home with Harry.

 5 A-0409-15T1
In the ensuing investigation, the Division also learned that Upton

sustained a broken leg from being hit by a car. Susan also advised

that Upton threatened to kill himself with a knife, and repeatedly

hits her injured arm. Upton was removed from the home by a Dodd

removal3 after Susan refused the Division's request to take or

subsequently go with Upton to the hospital due to his suicidal

ideations because she did not want to leave her disabled husband

alone at home.

 After Upton's removal, the Division amended a previously

filed verified complaint and filed an order to show cause seeking

custody of Upton because Susan placed him at risk of harm, pursuant

to N.J.S.A 9:6-8.21(c)(4)(a) or (b), by failing to seek

psychological counseling for his emotional and behavioral issues

as recommended by Dr. Maddux, and not seeking

psychological/psychiatric assistance when he expressed suicidal

ideations. In addition, the Division sought a finding of abuse

or neglect against Susan for leaving Upton with an inappropriate

caretaker, her disabled husband, when she went to the hospital due

to her injured arm.

3
 A Dodd removal refers to the emergency removal of a child from
the home without a court order, pursuant to the Dodd Act, which,
as amended, is found at N.J.S.A. 9:6-8.21 to -8.82. Former Senate
President Frank J. "Pat" Dodd authored the Act in 1974. N.J. Div.
of Youth & Family Servs. v. N.S., 412 N.J. Super. 593, 609 n.2
(App. Div. 2010).

 6 A-0409-15T1
 Following an October 2, 2013 fact-finding hearing, Judge

DeCastro found that Susan abused or neglected Upton "by subjecting

him to a substantial risk of harm by failing to seek psychological

treatment for her child's behavioral issues." The judge reasoned

that Susan's failure to follow Dr. Maddux's recommendation in

February 2013, that she seek individual psychological therapy for

Upton due to a high potential of harm, resulted in an escalation

of his highly harmful behavior. Upton continued to run away from

home and interact with strangers, he was aggressive towards others,

broke his leg from a car accident, was allegedly sexually abused,

and threatened suicide. Judge DeCastro furthered noted that Susan

ignored the substantial risk of leaving Upton with her husband,

who could not supervise the child because he was primarily

bedridden, amounted to "wanton and reckless" conduct because Susan

was aware of Upton's dangerous conduct, thereby breaching her

"minimum duty of care." Almost two years later, another judge

issued an order terminating the Title Nine litigation because the

Division filed a complaint seeking termination of parental rights,

which was granted. That proceeding is not the subject of this

appeal.

 To prevail in a Title Nine proceeding, the Division must show

by a preponderance of the competent, material, and relevant

evidence that the parent or guardian abused or neglected the

 7 A-0409-15T1
affected child. N.J.S.A. 9:6-8.46(b). "This includes proof of

actual harm or, in the absence of actual harm, the Division [is]

obligated to present competent evidence adequate to establish the

child was presently in imminent danger of being impaired

physically, mentally or emotionally." N.J. Div. of Youth & Family

Servs. v. S.I., 437 N.J. Super. 142, 158 (App. Div. 2014) (citation

omitted).

 Title Nine provides a child is "[a]bused or neglected" if he

or she is one:

 whose physical, mental, or emotional condition
 has been impaired or is in imminent danger of
 becoming impaired as the result of the failure
 of his parent or guardian . . . to exercise a
 minimum degree of care (a) in supplying the
 child with adequate food, clothing, shelter,
 education, medical or surgical care though
 financially able to do so or though offered
 financial or other reasonable means to do
 so[.]

 [N.J.S.A. 9:6-8.21(c)(4).]

The term "'minimum degree of care' refers to conduct that is

grossly or wantonly negligent, but not necessarily intentional."

G.S. v. Dep't of Human Servs., 157 N.J. 161, 178 (1999) (citing

Miller v. Newsweek, 660 F. Supp. 852, 858-59 (D. Del. 1987)). A

parent "fails to exercise a minimum degree of care when he or she

is aware of the dangers inherent in a situation and fails

adequately to supervise the child or recklessly creates a risk of

 8 A-0409-15T1
serious injury to that child." Id. at 181. When determining

whether a child is abused or neglected, the focus is on the harm

to the child, and whether that harm should have been prevented had

the guardian performed some act to remedy the situation or remove

the danger. Id. at 182.

 "Abuse and neglect cases 'are fact-sensitive.'" Dep't of

Children & Families, Div. of Child Prot. & Permanency v. E.D.-O.,

223 N.J. 166, 180 (2015)(quoting Dep't of Children & Families,

Div. of Youth & Family Servs. v. T.B., 207 N.J. 294, 309 (2011)).

We give considerable deference to the family court's factual

determinations because it has "the opportunity to make first-hand

credibility judgments about the witnesses who appear on the stand

. . . [and] a 'feel of the case' that can never be realized by a

review of the cold record." N.J. Div. of Youth & Family Servs.

v. E.P., 196 N.J. 88, 104 (2008) (quoting N.J. Div. of Youth &

Family Servs. v. M.M., 189 N.J. 261, 293 (2007)). "Only when the

trial court's conclusions are so 'clearly mistaken' or 'wide of

the mark' should an appellate court intervene and make its own

findings to ensure that there is not a denial of justice." Ibid.

(quoting N.J. Div. of Youth & Family Servs. v. G.L., 191 N.J. 596,

605 (2007)).

 Susan contends that Judge DeCastro's finding of abuse and

neglect was not supported by substantial evidence, noting a lack

 9 A-0409-15T1
of objective evidence that she was willful or wanton with respect

to Upton's imminent safety. Susan maintains that Dr. Maddux did

not conclude she was the cause of Upton's behavioral issues, and

her rejection of Dr. Maddux's parenting strategy for her own

methods, is a clear indication that she was not grossly negligent.

She contends that leaving Upton in Harry's care for two hours

while she sought urgent medical care for her arm does not establish

that she was grossly negligent or reckless, or placed him in

imminent and substantial danger. She further argues that her

decision not to seek emergency attention concerning Upton's threat

to kill himself, did not create a substantial risk of harm because

she reasonably perceived that the threat was not legitimate.

 Here, the record amply supports Judge DeCastro's findings.

She found that despite Susan's admission of being overwhelmed in

trying to care for Upton, Susan failed to pursue any of the

recommendations by Dr. Maddux to address Upton's significant

behavioral issues. While Susan did not cause Upton's behavioral

issues, we agree with Judge Decastro that Susan's disregard of the

Division's assistance constitutes abuse or neglect under the law.

 Affirmed.

 10 A-0409-15T1