**RECORD IMPOUNDED**

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3372-15T4

NEW JERSEY DIVISION OF
CHILD PROTECTION AND
PERMANENCY,

    Plaintiff-Respondent,

v.

Y.O.,

    Defendant-Appellant,

and

J.T., Sr.,

    Defendant.

_____

IN THE MATTER OF J.T., Jr.,

    A minor.

_____

Submitted May 16, 2017 — Decided August 2, 2017

Before Judges Sumners and Mayer.

On appeal from Superior Court of New Jersey,
Chancery Division, Family Part, Hudson County,
Docket No. FN-09-227-15.

Joseph E. Krakora, attorney for appellant
(Cary L. Winslow, Designated Counsel, on the
brief).

Christopher S. Porrino, Attorney General, attorney for respondent (Andrea M. Silkowitz, Assistant Attorney General, of counsel; Alaina M. Antonucci, Deputy Attorney General, on the brief).

Joseph E. Krakora, Public Defender, attorney for minor (Todd Wilson, Designated Counsel, on the brief).

PER CURIAM

Defendant Y.O. (Yolonda)[1] appeals from the fact-finding determination that she abused or neglected her nine-month-old son J.T., Jr. (Junior) by operating a motor vehicle under the influence while he was a passenger in the vehicle. The Law Guardian on behalf of the child urges us to affirm and, after a thorough review of the record and the trial judge's findings, we affirm substantially for the reasons reflected in the trial court's oral decision.

We recite the following from the fact-finding hearing as relevant to our decision. At approximately 9:12 p.m., Yolonda was sitting in the driver's seat of her idling motor vehicle that was doubled parked on a very narrow street in the City of Passaic. Also in the vehicle were Yolonda's boyfriend J.T. (John) who was in the front passenger's seat, a man only referred to as "Macho"

---

[1] We use first name pseudonyms to protect the privacy of parties and the minor child and for convenience, and we mean no disrespect in doing so.

A-3372-15T4

who was in the back seat, and Junior, Yolonda's and John's son was in an infant car seat situated in the back seat. As Passaic police officers Michelle Merced and Matthew Auslander drove past the vehicle in an unmarked police car, Auslander observed and then stated to Merced that the driver appeared to be inebriated. Merced, who was driving the police car, pulled over and stopped in front of the vehicle, at which point Macho immediately exited the vehicle and fled. Auslander unsuccessfully chased after Macho, and returned to the scene. Meanwhile, when Merced went to the vehicle, John also got out and fled, thereby leaving only Yolonda and Junior in the vehicle.

Merced looked inside the vehicle and saw in the middle console a twenty-four ounce bottle of Coors beer and a unlit blunt, which she described as marijuana that is put inside a hollowed out cigar wrapper. Although the blunt was not tested, both Merced and Auslander testified that, based upon their training and experience, it smelled like marijuana. In addition, they both stated that Yolonda appeared to be under the influence because her eyes were bloodshot and watery. Auslander also claimed that another indicia of Yolonda's inebriation was her slow and slurred speech.

At Merced's request, Yolonda consented to a search of the vehicle. A handgun, with the safety lock off and loaded with

hollow nose point bullets, was found halfway under the front passenger's seat. Merced stated that both Yolonda and John had access to the gun. Yolonda was arrested and charged with possession of the weapon and hollow nose point bullets, as well as marijuana possession, and was issued several motor vehicle summonses.

Division of Child Protection and Permanency (Division) caseworker Nitzana Silverman testified that two days after the incident she spoke to Yolonda at the county jail concerning her arrest and the welfare of her son. The Division had taken custody of Junior under a Dodd Removal.[2] Yolonda revealed to Silverman that if she were tested, she would test positive for marijuana. However, she denied smoking on the day of the incident, instead claiming that her eyes were red and watery due to an emotional argument with her mother prior to her arrest. Yolonda also told Silverman that she was aware of the blunt in the car, but unaware that there was a weapon in her car.

---

[2] A Dodd removal refers to the emergency removal of a child from the home without a court order, pursuant to the Dodd Act, which, as amended, is found at N.J.S.A. 9:6-8.21 to -8.82. Former Senate President Frank J. "Pat" Dodd authored the Act in 1974. N.J. Div. of Youth & Family Servs. v. N.S., 412 N.J. Super. 593, 609 n.2 (App. Div. 2010).

On April 8, 2015, the trial court issued its order and oral decision that Yolonda abused or neglected her son by placing him at a risk of harm by driving a vehicle under the influence with him as a passenger.[3] In reaching its decision, the court found that Yolonda's conduct constituted abuse or neglect because she failed to exercise the minimum degree of care contemplated in N.J.S.A. 9:6-8.46(b). The court credited the testimony of the police officers and Silverman stating:

> We have a driver in a car. The car is running. Credible testimony from the two police officers, after speaking with her and viewing her[,] . . . that she is inebriated, she is under the influence. [Silverman's] testimony that she [admitted she] would test positive for marijuana. The incident occurred on [October 17]. She was interviewed [by Silverman] on [October 20]. Clearly, based upon that, it's an inference, the [c]ourt finds . . . she was smoking or inhaling marijuana on that day as she was driving and her child of nine months was in the back seat of that car.

On February 2, 2016, the court transferred legal and physical custody of Junior back to Yolonda. A month later, the Title Nine litigation was terminated at the request of the Division. This appeal ensued.

---

[3] John was also found to have abused or neglected his son. However, he is not a party to this appeal, so we address neither the testimony nor the findings pertaining to him.

Yolonda contends that trial court's finding of abuse and neglect was not supported by substantial evidence. Specifically, she argues neither police officer testified that she was under the influence, that she underwent no testing for drug or alcohol use the night she was arrested, and there was no testimony that she smelled of alcohol or marijuana. Moreover, she argues that the alcohol and contraband in the car posed no risk to Junior. We are unpersuaded.

To prevail in a Title Nine proceeding, the Division must show by a preponderance of the competent, material, and relevant evidence that the parent or guardian abused or neglected the affected child. N.J.S.A. 9:6-8.46(b). "This includes proof of actual harm or, in the absence of actual harm, the Division [is] obligated to present competent evidence adequate to establish the child was presently in imminent danger of being impaired physically, mentally or emotionally." N.J. Div. of Youth & Family Servs. v. S.I., 437 N.J. Super. 142, 158 (App. Div. 2014) (citation omitted).

Title Nine provides a child is "[a]bused or neglected" if he or she is one:

> whose physical, mental, or emotional condition has been impaired or is in imminent danger of becoming impaired as the result of the failure of his parent or guardian . . . to exercise a minimum degree of care (a) in supplying the

child with adequate food, clothing, shelter, education, medical or surgical care though financially able to do so or though offered financial or other reasonable means to do so[.]

[N.J.S.A. 9:6-8.21(c)(4).]

The term "'minimum degree of care' refers to conduct that is grossly or wantonly negligent, but not necessarily intentional." G.S. v. Dep't of Human Servs., 157 N.J. 161, 178 (1999) (citing Miller v. Newsweek, 660 F. Supp. 852, 858-59 (D. Del. 1987)). A parent "fails to exercise a minimum degree of care when he or she is aware of the dangers inherent in a situation and fails adequately to supervise the child or recklessly creates a risk of serious injury to that child." Id. at 181.

Where there is no evidence that the child suffered actual harm, "the focus shifts to whether there is a threat of harm." N.J. Div. of Child Prot. & Permanency v. E.D.-O., 223 N.J. 166, 178 (2015). In such cases, "the Division must show imminent danger or a substantial risk of harm to a child by a preponderance of the evidence." Ibid. (citation omitted); see also N.J. Div. of Youth & Family Servs. v. A.L., 213 N.J. 1, 23 (2013) ("[A] finding of abuse and neglect can be based on proof of imminent danger and substantial risk of harm.").

"Abuse and neglect cases 'are fact-sensitive.'" E.D.-O., supra, 223 N.J. at 180 (quoting N.J. Div. of Youth & Family Servs.

v. T.B., 207 N.J. 294, 309 (2011)). We give considerable deference to the family court's factual determinations because it has "the opportunity to make first-hand credibility judgments about the witnesses who appear on the stand . . . [and] a 'feel of the case' that can never be realized by a review of the cold record." N.J. Div. of Youth & Family Servs. v. E.P., 196 N.J. 88, 104 (2008) (quoting N.J. Div. of Youth & Family Servs. v. M.M., 189 N.J. 261, 293 (2007)). "Only when the trial court's conclusions are so 'clearly mistaken' or 'wide of the mark' should an appellate court intervene and make its own findings to ensure that there is not a denial of justice." Ibid. (quoting N.J. Div. of Youth & Family Servs. v. G.L., 191 N.J. 596, 605 (2007)).

Applying these principles, we will not disturb the trial court's order. We do not consider Yolonda's conduct under the criminal standard of proof beyond a reasonable doubt. Based upon the preponderance of evidence standard, the record supports the court's credibility and factual findings that Yolonda was driving under the influence with her infant son in a vehicle. The arresting police officers both testified that Yolonda appeared to be under the influence in the driver's seat of a car that was double parked, with the engine running, and with marijuana and beer in the vehicle. In addition, three days after her arrest and subsequent incarceration, she admitted to the Division caseworker

that she had been smoking marijuana. We therefore will not interfere with court's finding that Yolonda's conduct placed her son at imminent risk of danger or a substantial undue risk of harm, constituting abuse or neglect.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION