# **RECORD IMPOUNDED**

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4350-17T4

NEW JERSEY DIVISION
OF CHILD PROTECTION
AND PERMANENCY,

     Plaintiff-Respondent,

v.

S.R.,

     Defendant-Appellant.

_____

IN THE MATTER OF L.J.R.,

     a Minor.

_____

Submitted September 10, 2019 – Decided September 27, 2019

Before Judges Ostrer and Susswein.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Essex County, Docket No. FN-07-0428-16.

Joseph E. Krakora, Public Defender, attorney for appellant (John A. Salois, Designated Counsel, on the briefs).

Gurbir R. Grewal, Attorney General, attorney for respondent (Jason Wade Rockwell, Assistant Attorney General, of counsel; Carlos J. Martinez, Deputy Attorney General, on the brief).

Joseph E. Krakora, Public Defender, Law Guardian, attorney for minor (Meredith Alexis Pollock, Deputy Public Defender, of counsel; Cory Hadley Cassar, Designated Counsel, on the brief).

PER CURIAM

Defendant S.R. (Sally)[1] appeals from the Family Part's final order, following an August 17, 2016 fact-finding hearing, determining that she neglected her then two-month-old son, L.J.R. (Lawrence), by providing him inadequate supervision. The Law Guardian joins the Division of Child Protection and Permanency in opposing the appeal. We are satisfied that sufficient, substantial, credible evidence in the record supports the court's fact-finding, and the court properly applied the governing law. We therefore affirm.

Sally also challenges a February 2018 permanency order, determining that termination of parental rights followed by adoption was an appropriate plan. Two months later, the court entered an order terminating the Title Nine litigation, because a complaint for termination of parental rights had been filed. We dismiss as moot that aspect of Sally's appeal, inasmuch as she executed an

---

[1] For the reader's convenience, we use pseudonyms for defendant and her son.

A-4350-17T4

unconditional voluntary surrender of her parental rights in January 2019. Therefore, the permanency order has no ongoing adverse consequences, and our review of it could have "'no practical effect on the existing controversy.'" See N.J. Div. of Youth & Family Servs. v. A.P., 408 N.J. Super. 252, 261 (App. Div. 2009) (quoting Greenfield v. N.J. Dep't of Corr., 382 N.J. Super. 254, 257-58 (App. Div. 2006)) (stating that an issue is moot when the decision sought would have no practical effect on the dispute, and the party suffers no adverse consequences from the challenged order).

Therefore, we focus our attention on the neglect finding. The Division presented its case through a Division caseworker, Avion Vernon, and a Nutley police officer, Matthew Murphy. The court admitted into evidence the officer's report, and the Division's screening and investigative summaries, excluding embedded hearsay not subject to a hearsay exception. Sally did not testify nor did she present any witnesses.

Vernon testified that Sally travelled to New Jersey from South Carolina when Lawrence was one-month-old, to pursue a relationship with a man she met on Instagram. Sally had no plan regarding where she would live. About a month after she arrived, Lawrence's father reported to Nutley police that he was concerned that Lawrence was at risk. Late that April evening, Officer Murphy

ultimately found Sally and Lawrence in a home in Belleville. The officer testified that the house was crowded with numerous adults who had no apparent relation to Sally or Lawrence. The house was in disarray; the kitchen was messy; and open soda cans spilled on the floor. The house also lacked electricity. The first floor was illuminated by several candles on a coffee table. Nearby, Lawrence was asleep on a couch, without any barriers to prevent him from rolling onto the hardwood floor, or jostling the candles on the table.

Sally was unable to explain coherently where she was living with her son. She gave Murphy two different addresses other than the house in Belleville. Upon investigation, the police found that the first one did not exist, and the second one was vacant. Sally also appeared to Murphy to be under the influence of a narcotic. She was lethargic; frequently lost her train of thought; and appeared to fall asleep mid-sentence. She initially denied taking any narcotic. However, she later admitted she took a prescription pill not prescribed for her. Testing disclosed she had taken benzodiazepine. Sally stated that she suffered from Bell's Palsy, which accounted for a slight distortion of her face. A subsequent examination of Lawrence at a nearby hospital disclosed that he was in good health.

A-4350-17T4

Judge Linda Lordi Cavanaugh credited the caseworker's and officer's testimony. Based on their recitation of the events, which we have just described, the judge found that Sally neglected Lawrence under N.J.S.A. 9:6-8.21(c), because she exposed Lawrence to a substantial risk of harm by providing him inadequate supervision and shelter.[2]

On appeal, Sally contends that her conduct did not rise to the level of gross negligence required to support a finding of abuse or neglect. She contends that she neither harmed Lawrence, nor placed him at imminent risk of harm. We disagree.

We apply a deferential standard of review. We will not disturb the trial judge's factual findings, as long as they are supported by substantial credible evidence. N.J. Div. of Youth & Family Servs. v. L.L., 201 N.J. 210, 226 (2010); N.J. Div. of Youth & Family Servs. v. M.M., 189 N.J. 261, 279 (2007). However, "[w]here the issue to be decided is an 'alleged error in the trial judge's evaluation of the underlying facts and the implications to be drawn therefrom,' we expand the scope of our review." N.J. Div. of Youth & Fam. Servs. v. G.L., 191 N.J. 596, 605 (2007) (quoting In re Guardianship of J.T., 26 N.J. Super.

---

[2] The court issued an order on May 30, 2018, documenting its findings, because the order issued immediately following the hearing was lost.

A-4350-17T4

172, 188-89 (App. Div. 1993)). We exercise de novo review of issues of law. Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995). In particular, the finding that conduct constitutes gross negligence, as opposed to simple negligence, is a "'conclusion of law to which we are not required to defer.'" Dep't of Children & Families v. T.B., 207 N.J. 294, 308 (2011) (quoting N.J. Div. of Youth & Family Servs. v. A.R., 419 N.J. Super. 538, 542-43 (App. Div. 2011)).

As Lawrence did not suffer actual harm, the Division had the burden to prove by a preponderance of "competent, material and relevant evidence," N.J.S.A. 9:6-8.46(b), that his "physical, mental, or emotional condition . . . [was] in imminent danger of becoming impaired as the result of [Sally's] failure . . . to exercise a minimum degree of care." N.J.S.A. 9:6-8.21(c)(4); see also N.J. Dep't of Children & Families v. E.D.-O., 223 N.J. 166, 178 (2015) (noting that the Division need not prove actual harm). The failure to exercise a minimum degree of care here mainly pertained to "providing the child with proper supervision," N.J.S.A. 9:6-8.21(c)(4)(b).

A "minimum degree of care" encompasses "conduct that is grossly or wantonly negligent, but not necessarily intentional." G.S. v. Dep't of Human Servs., 157 N.J. 161, 178 (1997). A parent is wantonly negligent when he or

she engages in conduct that he or she knew, or a reasonable person would know, would likely or probably result in injury. Id. at 178-79. In other words, "willful and wanton misconduct implies that a person has acted with reckless disregard for the safety of others." Id. at 179. Mere negligence does not suffice to establish abuse or neglect under the statute. T.B., 207 N.J. at 306-07; G.S., 157 N.J. at 172-73. Whether a parent has failed to exercise a minimum degree of care where there is no actual harm "is fact-sensitive and must be resolved on a case-by-case basis." E.D.-O., 223 N.J. at 192. The Supreme Court warned that in undertaking this analysis, trial and appellate courts "must avoid resort to categorical conclusions." Id. at 180 (citing T.B., 207 N.J. at 309).

Applying these principles, we discern no error in the trial court's conclusion that Sally neglected Lawrence. We focus on the inadequate supervision finding.[3]

---

[3] The evidence supported the court's finding that Sally provided inadequate shelter for her infant son. She had no confirmed residence. She and Lawrence were found in a house that lacked electricity, was occupied by numerous strangers, and was lit by candles that posed a fire hazard. The infant was asleep on a couch, without any barriers to prevent him from rolling off and injuring himself. However, the court did not expressly address the essential element of neglect based on inadequate shelter – a finding that the parent had the financial ability or access to the financial wherewithal to provide adequate shelter. See N.J.S.A. 9:6-8.21(c)(4)(a); see also N.J. Div. of Youth & Family Servs. v. P.W.R., 205 N.J. 17, 37 (2011).

The record supports the court's conclusion that Sally inadequately supervised her infant son. Officer Murphy found Sally outside the Belleville house while Lawrence was asleep inside, unattended. Furthermore, Sally appeared incapable of attending to Lawrence's needs. She appeared to be under the influence of a narcotic. She was inattentive, and unable to converse without losing her train of thought, and seemed to fall asleep mid-sentence. She later admitted that she ingested a pill without a prescription. A drug screen indicated she had taken benzodiazepine. The evidence supports a finding that Sally was not in the right condition to supervise and attend to the needs of a two-month-old infant; and this failure to supervise posed an imminent threat of injury, particularly in light of the child's placement on a couch, without barriers, near burning candles.

We are unpersuaded by Sally's attempt to equate these facts to those in N.J. Div. of Youth & Family Servs. v. A.L., 213 N.J. 1 (2013), in which the Court reversed a finding of abuse or neglect. The Court held that the Division failed to prove by preponderance of evidence that a mother who tested positive for cocaine during pregnancy, but whose child did not test positive upon birth, had placed her child in imminent danger or a substantial risk of harm. Id. at 27-28. Here, Judge Lordi Cavanaugh did not ground her finding solely on Sally's

use of an unprescribed medicine. The court based its findings on Sally's incapacity to supervise her infant, as Office Murphy described in detail.

It is also not dispositive that Lawrence was unharmed and in good health, as Sally highlights. "Courts need not wait to act until a child is actually irreparably impaired by parental inattention or neglect." In re Guardianship of D.M.H., 161 N.J. 365, 383 (1999). The trial judge's determination finds support in N.J. Div. of Youth & Family Servs. v. A.R., in which we found a parent grossly negligent because he left an infant on a bed without rails or other protection to prevent the child from touching a hot radiator. 419 N.J. Super. 538, 545-46 (App. Div. 2011). We recognize that the child in that case suffered actual injuries, after rolling over and lodging against the radiator. Id. at 540. However, our view of the nature of the parent's conduct applies with equal force here, where Sally left her infant son asleep unattended on a couch, without rails or other barriers to prevent him from falling to a hard floor or toppling candles burning nearby.

Finally, we give no weight to Sally's explanations of her medical condition; the circumstances surrounding her visit to New Jersey; her housing plans; and her plans to care for Lawrence. These were not presented at the

hearing, where they could be subject to cross-examination, and the court's assessment of their credibility.

Dismissed in part and affirmed in part.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4350-17T4