# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1065-18T1

NEW JERSEY DIVISION
OF CHILD PROTECTION
AND PERMANENCY,

     Plaintiff-Respondent,

v.

F.P.,

     Defendant,

and

J.B.,

     Defendant-Appellant.

_____

IN THE MATTER OF V.B., JU.B.,
and JUL.B.,

     Minors.

_____

Submitted March 12, 2020 – Decided April 23, 2020

Before Judges Alvarez and DeAlmeida.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Middlesex County, Docket No. FN-12-0230-17.

Joseph E. Krakora, Public Defender, attorney for appellant (Robyn A. Veasey, Deputy Public Defender, of counsel; Ingrid A. Enriquez, Designated Counsel, on the brief).

Gurbir S. Grewal, Attorney General, attorney for respondent (Melissa H. Raksa, Assistant Attorney General, of counsel; Salima E. Burke, Deputy Attorney General, on the brief).

Respondent minors have not filed a brief.

PER CURIAM

Defendant J.B.[1] appeals from the April 2, 2018 order of the Family Part finding he abused and neglected three of his children. We affirm.

## I.

The following facts are derived from the record. J.B. and defendant F.P. are the parents of three minor children, V.B., Ju.B., and Jul.B.

On April 11, 2017, J.B. was driving with F.P. and Jul.B. as passengers. After dropping off the child, J.B. pulled a knife on F.P. and stabbed her repeatedly. As he stabbed F.P., J.B. said "[d]ie . . . . [y]ou deserve it." Having

---

[1] We identify the parties by initials to protect confidential information in the record. R. 1:38-3(d)(12).

wrested the knife from J.B. and finding the car door locked, F.P. jumped out of the window of the moving car. J.B. drove away. Emergency personnel who found F.P. on the side of the road airlifted her to a trauma center, where she was treated for stab wounds to her shoulder and abdomen, and fractures of the neck, ankle, and ribs.

After stabbing F.P., J.B. called F.P.'s adult daughter, S.P., and told her he killed F.P. and planned to kill himself. He asked her to look after her younger siblings. V.B., then sixteen, was with S.P. when her father called. She heard his conversation with S.P. over the speakerphone.

Police subsequently arrested J.B. An officer reported the incident to plaintiff Division of Child Protection and Permanency (DCPP).

An investigation by DCPP revealed a history of abuse in the family. DCPP's predecessor agency substantiated allegations of abuse or neglect by J.B. in 2004, 2005, 2007, and 2011, and placed the children in resource care temporarily in 2009 and 2011.

With respect to the stabbing, V.B. told an investigator she was not surprised by J.B.'s attack on her mother because he was jealous and suspected her mother of talking to another man. According to V.B., her father placed recording devices throughout the home to record F.P.'s conversations. V.B.

reported that J.B. had often threatened F.P., including threatening to shoot her in her vagina. She had often heard her parents arguing but had not seen them physically fight.

Ju.B. also told investigators J.B. often threatened F.P., and the stabbing did not come as a surprise to her. She confirmed J.B. had placed recording devices in the home. She witnessed F.P. push and slap J.B. to get him to leave the home. She worried J.B. would harm her mother. Ju.B. learned J.B. stabbed her mother through news reports she viewed on her cellphone and television, as well as from V.B.

Jul.B. told an investigator J.B. and F.P. constantly argued, although he did not understand what they were saying because they argued in Spanish, which he did not understand. He stated he would hide in his bedroom when his parents argued and had not seen physical violence between them.

During the investigation, J.B. claimed after he confronted F.P. with a recording of her conversation with another man, she pulled a large kitchen knife on him. According to J.B., F.P. was injured during a tussle for control of the knife. He claimed after he gained control of the knife, F.P. jumped out of the moving car. He did not recall calling S.P. or saying that he had killed F.P.

4

DCPP thereafter filed a complaint for custody, care, and supervision of the children, which the court granted. The children were placed with relatives.

The trial court held a three-day factfinding hearing on allegations of J.B.'s abuse and neglect of the three children. In addition to hearing testimony from fact witnesses, including two of the children, the court heard testimony from an expert in domestic violence, child abuse, and psychology called by DCPP. J.B. did not call an expert witness.

The expert testified regarding his psychological evaluations of each child and F.P. He opined V.B. suffered trauma stemming from the stabbing of her mother, which "piled upon years and years of prior traumas of a similar nature." In the expert's opinion, V.B.'s trauma rose to the level of emotional abuse. The expert added that, if nothing were done, V.B. could develop a conduct disorder causing her to have dysfunctional relationships as a result of the trauma she experienced.

The expert opined Ju.B. suffered trauma associated with both past and recent domestic violence in the family, resulting in emotional abuse. He further opined Jul.B. suffered trauma from exposure to domestic abuse that could have significance later in life, particularly from having been in the car shortly before J.B. stabbed his mother.

A-1065-18T1

On April 2, 2018, the trial court issued findings of fact and conclusions of law in an oral decision. The court concluded J.B. failed to exercise a minimum degree of care by exposing each of the children to ongoing domestic violence. As the court explained, J.B.,

> although aware of the dangers inherent in the situation, namely, the abusive relationship he continued with [F.P.], . . . through his own actions . . . caused harm and created a risk of harm to the children by his . . . continued actions with his wife. Those actions caused the children to suffer trauma . . . .

The court also found J.B.

> clearly acted with a reckless disregard for the safety of his children in conducting this in front of his children for such a period of time, culminating . . . in this incident of the stabbing and then making that statement which [V.B.] heard.

Finally, the court adopted the expert's testimony that each child

> was suffering from a harm from trauma that was caused by this exposure to domestic violence and that each of them needed individual therapy to deal with the issues that they have dealt with because of this ongoing domestic violence that they have seen in the home.

The court concluded that even in the absence of the children witnessing physical violence, the record contained credible evidence of a causal relationship between their exposure to their parents' violent relationship and their current emotional conditions. Thus, the court found by a preponderance of the evidence

6

A-1065-18T1

J.B. abused and neglected his children within the meaning of N.J.S.A. 9:6-8.21(c)(4)(b).

On April 2, 2018, the court entered a written order memorializing its conclusion.[2]

This appeal followed. J.B. makes the following argument for our consideration:

> THE TRIAL COURT'S LEGAL CONCLUSION THAT J.B. ABUSED OR NEGLECTED HIS CHILDREN WAS NOT SUPPORTED BY ADEQUATE, SUBSTANTIAL, CREDIBLE EVIDENCE AND MUST BE REVERSED.
>
> A. THE COURT'S RELIANCE ON [THE EXPERT'S] PSYCHOLOGICAL REPORT WAS ERRONEOUS WHERE THE FACTS CONTRADICTED HIS FINDINGS THAT THE CHILDREN WERE ABUSED OR NEGLECTED.
>
> B. THERE IS INSUFFICIENT EVIDENCE THAT THE ALLEGED DOMESTIC VIOLENCE BETWEEN J.B. AND F.P. CAUSED HARM TO THE CHILDREN.

II.

We defer to Family Part judges' fact-finding because of their "special jurisdiction and expertise in family matters," Cesare v. Cesare, 154 N.J. 394,

---

[2] The trial court subsequently terminated the litigation, with the parents retaining legal custody and F.P. retaining physical custody of the children.

413 (1998), their "opportunity to make first-hand credibility judgments about the witnesses who appear on the stand[,] [and their] feel of the case that can never be realized by a review of the cold record." N.J. Div. of Youth & Family Servs. v. M.C. III, 201 N.J. 328, 342-43 (2010) (quoting N.J. Div. of Youth & Family Servs. v. E.P., 196 N.J. 88, 101 (2006)). Fact-finding that is supported by "substantial credible evidence in the record" is upheld. N.J. Div. of Youth & Family Servs. v. L.L., 201 N.J. 210, 226 (2010). However, we will not hesitate to set aside a ruling that is "so wide of the mark that a mistake must have been made." N.J. Div. of Youth & Family Servs. v. M.M., 189 N.J. 261, 279 (2007) (quoting C.B. Snyder Realty, Inc. v. BMW of No. Amer., Inc., 233 N.J. Super. 65, 69 (App. Div. 1989)).

After reviewing the record in light of J.B.'s arguments and the applicable legal precedents, we find there is substantial credible evidence supporting the trial court's conclusion J.B. abused and neglected the children. We add the following comments.

The "main focus" of Title Nine, of which N.J.S.A. 9:6-8.21(c)(4)(b) is a part, is "the protection of children." Div. of Child Prot. & Permanency v. E.D.-O., 223 N.J. 166, 178 (2015) (quoting G.S. v. Dep't of Human Servs., 157 N.J.

8

161, 177 (1999)).  Under Title Nine, a child is "[a]bused or neglected" when

their

> physical, mental, or emotional condition has been
> impaired or is in imminent danger of becoming
> impaired as the result of the failure of [a] parent . . . to
> exercise a minimum degree of care . . . in providing the
> child with proper supervision or guardianship, by
> unreasonably inflicting or allowing to be inflicted
> harm, or substantial risk thereof, including the
> infliction of excessive corporal punishment; or by any
> other acts of a similarly serious nature requiring the aid
> of the court . . . .
>
> [N.J.S.A. 9:6-8.21(c)(4)(b).]

Minimum degree of care "refers to conduct that is grossly or wantonly negligent,

but not necessarily intentional."  G.S., 157 N.J. at 178.  More is required than

ordinary negligence, but less is needed than an intentional infliction of injury.

Ibid.  "[A] guardian fails to exercise a minimum degree of care when he or she

is aware of the dangers inherent in a situation and fails adequately to supervise

the child or recklessly creates a risk of serious injury to that child."  Id. at 181.

Our Legislature has found that "children, even when they are not

themselves physically assaulted, suffer deep and lasting emotional effects from

exposure to domestic violence."  N.J.S.A. 2C:25-18.  A child's observation of

domestic violence, with no indication of harm resulting from that domestic

violence, cannot support an abuse and neglect finding.  N.J. Div. of Youth &

9

Family Servs. v. S.S., 372 N.J. Super. 13, 22-23, 28 (App. Div. 2004) ("we find . . . that harm [from domestic violence] cannot be presumed in the absence of evidence of its existence or potential").  However, abuse and neglect can be established if there is credible evidence establishing "a causal relationship between witnessing domestic violence and emotional distress in the [child] . . . ."  Id. at 22-23.  For instance, we found abuse and neglect existed when the children's exposure to domestic violence was linked by credible evidence to the children's aggressive behaviors and speech delays.  N.J. Div. of Youth & Family Servs. v. I.H.C., 415 N.J. Super. 551, 584-86 (App. Div. 2010).  Ultimately, "the fact-sensitive nature of abuse and neglect cases . . . turns on particularized evidence."  N.J. Div. of Youth & Family Servs. v. A.L., 213 N.J. 1, 28 (2013).

Essentially, J.B. argues his children were not harmed because they did not directly witness any physical violence between their parents and were not themselves physically assaulted.  We disagree.  The record includes expert testimony linking J.B.'s domestic violence toward F.P. to his children's psychological trauma, need for therapy, and potential long-term harm.  They were aware of J.B.'s violent acts towards F.P., including his violent assault on her in the car.  V.B. overheard J.B.'s admission to "killing" her mother shortly after the stabbing.  Ju.B. became aware of the attack from news reports naming

10

her parents. Jul.B. frequently hid in his room to escape his parents' fights. The stabbing was the culmination of a long pattern of domestic violence in the home. The trial court judge, having had the opportunity to evaluate the expert's testimony, found credible his opinion that the children's exposure to J.B.'s violent acts caused them emotional harm. J.B. offered no contrary expert testimony.

We disagree with J.B.'s argument the expert's opinion was rendered incredible by the children's testimony. Although V.B. testified she was never afraid J.B. would physically hurt her, the trial court's conclusion is based on the emotional trauma V.B. suffered by exposure to J.B.'s violence against her mother. As the expert explained, a child need not fear personal physical harm to suffer potentially long-lasting emotional damage. The same is true for the testimony of the other children, who denied having been physically assaulted by J.B. and did not express fear of being assaulted. The trial court found credible the expert's testimony that children exposed to a pattern of parental domestic violence often minimize their experience in an effort to keep the family from being separated.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1065-18T1